IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CHARLES JOHNSON, #643564,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:24-cv-01015 |
| ) | Judge Trauger |
| **TENNESSEE DEPARTMENT OF** ) | |
| **CORRECTIONS/CORECIVIC** ) | |
| **TRANSPORTATION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

Charles Johnson, a state prisoner incarcerated at the Trousdale Turner Correctional Center (TTCC), has filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2). The plaintiff has also filed an unsigned "Motion to Produce Security Footage Video." (Doc. No. 3.)

The case is before the Court for ruling on the plaintiff's IFP application and motion, and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. APPLICATION TO PROCEED IFP**

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from the plaintiff's IFP application that he lacks the funds to pay the entire filing fee, that application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which the plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of:

(a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. LEGAL STANDARD

The court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also id.* § 1915(e)(2) (requiring dismissal "at any time" such determination is made in a case filed IFP).

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

B. ALLEGATIONS AND CLAIMS

The gravamen of the plaintiff's 29-page Complaint against 16 defendants is his effort to recover damages to compensate him for the serious injuries he sustained when he fell trying to exit a prisoner transport van. The pertinent facts of this incident and its aftermath are recited below:

> Plaintiff while being transported by TDOC Transportation Department [from state prison to county jail], at his arrival at the Davidson Co. car port for court purposes, at or around 6:30 a.m. until 8:30 a.m., while being handcuffed, with belly chain, and leg restraints, w[ith] chain, while stepping out of the van, the leg chain that I was restrained in caught on the step (witnessed by the C.O. who stood and watched my fall, and failed to stop or prevent my fall) at which time, I landed directly on my face and my head struck the concrete floor before any other part of my body with my feet still elevated up on the step, then left unconscious on the floor until I

3

> awoke or being picked up by C.O. Staff, then moved by non-emergency responders, being moved immediately with obvious head injuries, neck and back injuries, which is very dangerous, careless and negligent.
>
> Later being rushed to the Meharry Medical Center ER-CT for a scan for head trauma, suffering from cuts to my face, nose fractured, neck trauma, back trauma, with three (3) broken teeth, vision impairment and a concussion, being told by Dr.'s that being moved could have very well killed me, constituting failure to protect.

(Doc. No. 1 at 6–7.) The plaintiff alleges that the transport guards failed to protect him and breached their duty of care when they failed to assist him in stepping down the step ladder in his shackles and chains, and when they announced, immediately before he caught his leg restraints "on the lip of the step" and fell, that "they would not help anyone that falls." (*Id.* at 7.) The plaintiff claims that the injuries he sustained in the fall "were inflicted callously and negligently" and "with a deliberate indifference to and disregard for Plaintiff's rights." (*Id.* at 8.) He claims that the transport guards were not properly trained "on how to safely exit the transportation van." (*Id.* at 9.)

The plaintiff further claims that, since his return from emergency medical care, he has been denied "medical records, updates, examinations, etc." despite the fact that he could easily be observed having difficulty with "routine and necessary activities such as walking, running, lifting, visual and even sitting up." (*Id.* at 11.) He states that he has "yet to see a specialist about [his] left hip [problems] and hearing problems in [his] left ear" suffered as a result of the fall. (*Id.* at 12.) The plaintiff further alleges that he has been denied "a referral for a consult or surgery." (*Id.* at 15.) He claims that he has experienced "psychological deterioration" as a result of being physically impaired while he is "housed together with a tougher element of the prison population" at TTCC, where minimum-, medium-, and maximum-security inmates are housed together. (*Id.* at 17.) He suffers from conditions including "stress from walking with a cane, loss of vision, headaches, hearing loss, incontinence (bowel functions improp[erly]), abdominal pain, erectile dysfunction,"

4

and an "ailment now discovered per nurses, that plaintiff believes is causing the other foreseeable issues." (*Id.* at 19.) The plaintiff claims that he "has been denied timely and adequate care" for these health conditions "stemming from the fall off the unsafe step ladder while exiting the van." (*Id.*)

The plaintiff sues for negligence under state law and—pursuant to a number of different legal theories—for violation of his rights under the Eighth and Fourteenth Amendments. He seeks an award of damages. (*Id.* at 27–28.)

C. ANALYSIS

Review of the Complaint in this case is unfortunately difficult because of its extended focus on jargon-heavy briefing of legal issues, its discussion of conditions at prisons other than the one where the plaintiff is housed, and its relative lack of factual allegations describing conditions after the plaintiff's fall from the transport van, emergency medical treatment, and return to TTCC. Nevertheless, the plaintiff's claims can be distilled into three categories: (1) claims against the transport guards and the officials who inadequately trained them, for negligently breaching "a duty of reasonable care not to place the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' – [a] faulty unsafe step down ladder" (Doc. No. 1 at 2–4); (2) a claim concerning the conditions of confinement at prisons managed by CoreCivic, especially TTCC, where inmate violence is encouraged by intentional understaffing for the sake of profit and by housing inmates of different security classifications together (*id.* at 5–6, 16–18);[1] and (3) a claim of deliberate indifference to the plaintiff's serious medical needs after his return to prison

---

[1] The court notes that the Complaint also includes a claim labelled "Failure to Protect" from dangerous conditions against "Defendants TDOC/CoreCivic Transportation Dept." (Doc. No. 1 at 9–10.) However, the allegations supporting that claim have nothing to do with the plaintiff. Instead, they refer to harms suffered by "Mr. Brinson and Mr. Powell" as a result of the poor effort to control the spread of COVID-19 at TTCC. The court will disregard this portion of the Complaint.

5

following emergency care at the Meharry Medical Center in Nashville. (*Id.* at 11–15, 18–19.) The court will analyze these claims in sequence.

1. <u>Duty to Protect Plaintiff from Fall from Transport Van</u>

To succeed on his claim that the unnamed transport guards violated his Eighth Amendment rights by acting with deliberate indifference to his safety, the plaintiff would need to show that, by allowing him to step down unassisted from the van using a short step ladder while in full restraints, the guards exposed him to a "substantial," "excessive" risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). He would further need to show that the guards were "subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

While there have been cases involving falls from a prison van where the allegedly unsafe conditions have risen to the level of objective seriousness required to state an Eighth Amendment claim, such cases are few and far between, and would be expected to involve an additional, complicating factor—such as a disabled plaintiff who had a "special vulnerability to everyday hazards" like tripping and falling. *See Burgess v. Shima*, No. 21-CV-401-JDP, 2021 WL 5811225, at *2 (W.D. Wis. Dec. 7, 2021); *but see Paulk v. Sessler*, No. 3:24-CV-431-TJC-JBT, 2024 WL 2894669, at *2 (M.D. Fla. June 10, 2024) (finding that inmate who fell from van did not face a substantial risk of serious harm even though she was "still heavily medicated [following surgery] and wearing a medical bracelet indicating she was a 'fall risk' and a 'seizure risk'"). Otherwise, stepping down from a van using a "makeshift stool," a milk crate, or similar device that is required because of the prisoner's restraint in leg shackles constitutes an "[e]veryday hazard that could lead to slipping and falling," *id.* (citing cases), rather than a risk of harm sufficiently serious to trigger

6

constitutional protection. *See also Brown v. Sec'y of Pub. Safety & Corr.*, No. CIV.A. 12-2923-P, 2013 WL 4813757, at *2 (W.D. La. Sept. 6, 2013) (dismissing Eighth Amendment claim by inmate who tripped and fell exiting a transport van, and who was unassisted by guards despite having "limited maneuverability because he was in shackles," because "having an inmate exit a transport van in shackles does not create a substantial risk of serious harm"); *Henderson v. Brown*, No. 08 C 3172, 2010 WL 3861056, at *5 (N.D. Ill. Sept. 27, 2010) ("Requiring an inmate in restraints to step from a van to a milk crate to the ground without assistance arguably imposes a challenge" but "was not so inherently dangerous as to amount to an objectively serious risk of harm for purposes of Eighth Amendment analysis."); *Offord v. Stalder*, No. CIV. A. 08-0058-A, 2008 WL 859138, at *2 (M.D. La. Mar. 31, 2008) (finding that, "[a]lthough it may in fact have been objectively difficult for the plaintiff to step out of the transport vehicle onto an unstable milk crate" while wearing full restraints, claim against officer "sound[s] in the nature of negligence alone" rather than disregard of substantial risk to inmate safety).

Here, the plaintiff's allegations do not plausibly support his position that descending from the van in full restraints, with the use of a step ladder but without the support or assistance of the transport guards, put him at any elevated, excessive risk sufficient to ground a claim of deliberate indifference rather than a claim of negligent breach of a duty of care. Without other, extenuating circumstances that would have been known to increase the plaintiff's likelihood of falling, the failure to assist him down from the van floor to the landing below "does not amount to cruel and unusual punishment" under the Eighth Amendment. *Wilson v. Dee*, No. 1:15-CV-P146-GNS, 2016 WL 1261172, at *3 (W.D. Ky. Mar. 30, 2016) (quoting *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004)). Consequently, the plaintiff's remedy for his severe injuries "must be sought in state court under traditional state tort law principles." *Id.* His Eighth Amendment claim and related

claims under Section 1983 for failure to adequately train and supervise the transport officers will be dismissed.

2. <u>Dangerous Conditions at TTCC</u>

The plaintiff's claim concerning the dangerous conditions of confinement at CoreCivic prisons, including and especially TTCC, is misjoined in this lawsuit over the plaintiff's injuries related to his fall from the transport van and his subsequent medical treatment. His attempt to link the claims by pointing to "systemic deficiencies in TTCC/Classification that negatively affect the level of care actually delivered" and therefore cause "increased levels of denial of medical assistance, unnecessary violence and . . . the [plaintiff's] psychological deterioration," is unavailing. These claims are simply not related. Accordingly, the claim against CoreCivic, the TDOC Commissioner, and Warden Vantell for creating a dangerous environment where inmates with different security classifications are housed together (*see* Doc. No. 1 at 16–18) will be dismissed without prejudice to being reasserted in a new lawsuit. *See Jennings v. Bennett*, No. 1:17-CV-555, 2017 WL 3712176, at *6 & n.3 (W.D. Mich. Aug. 29, 2017) (dismissing unrelated claims as misjoined under Fed. R. Civ. P. 21, "without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants . . . who are transactionally related to one another").

3. <u>Constitutionally Inadequate Medical Care</u>

A claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment has both an objective and subjective component. As applied to this case, the objective component requires that the residual pain and limitations suffered by the plaintiff following his fall from the transport van and return to TTCC's medical care present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If it does, the subjective component requires that the defendants understood yet consciously disregarded his need for medical treatment. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference has thus been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

Even affording the Complaint a liberal construction and viewing its allegations in the light most favorable to the plaintiff, it does not support a plausible claim that his constitutional right to adequate medical care was violated at TTCC. Assuming that the plaintiff's residual symptoms and limitations presented an obvious, sufficiently serious need for medical treatment, TTCC medical staff did not disregard that need. According to the plaintiff, he has not been taken to specialists for evaluation of his left hip and for treatment of hearing problems in his left ear (Doc. No. 1 at 12), nor has he been referred "for a consult or surgery." (*Id.* at 15.) But prison officials who otherwise provide medical care to an inmate may decline to refer that inmate to a specialist's care without running afoul of the Eighth Amendment. *See Rhinehart*, 894 F.3d at 744 (finding that prison doctor who monitored and treated inmate's condition in lieu of following outside physician's recommendation of referral to a specialist did not evidence "conscious disregard for Rhinehart's condition," but merely a difference of medical opinion). Moreover, the plaintiff states that his nurses at TTCC have discovered an ailment that may be the source of his symptoms, while "CoreCivic medical staff has personally participated in the provision of medical care and treatment," albeit without granting his "request for his medical status." (Doc. No. 1 at 19.) "Where a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," unless "the medical attention rendered [is] so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Despite the plaintiff's dissatisfaction with his medical treatment at TTCC and his fear of losing his "procreative abilities" (Doc. No. 1 at 18–19),[2] the Complaint fails to demonstrate that the medical care he received was "so woefully inadequate" as to be entirely negligible or suggestive of a total lack of concern for his conditions. His averment that the "fact that medical procedures utilized at prison were no worse than those [employed] at other correctional facilities does not excuse Eighth Amendment violation[s]" (*id.* at 18), together with his other references to treatment by unnamed nurses and CoreCivic medical staff, establish that his medical conditions are not being ignored at TTCC. His preference for a different course of treatment is inapposite to the analysis of whether his constitutional rights were violated. *See Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) ("An inmate's disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation. Nor does a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim.") (citations and internal quotation marks omitted). At best, the plaintiff's allegations may support a claim of medical

---

[2] The plaintiff "avers that, as a direct result of delayed and failure to disclose to Plaintiff with his medical records, that necessary treatment plan is necessary to avoid future ramifications due to his declining health, which he will forever suffer from numerous unspecified mental and emotional problems if Plaintiff Johnson can not preserve his procreative abilities." (Doc. No. 1 at 19.) Elsewhere, the plaintiff asserts that violations of his constitutional rights "were caused by Defendants[ ] CoreCivic Medical staff while acting under color of state law implementing and executing municipal policies harmful to evidence deliberate indifference to serious medical needs or created a policy or custom under which unconstitutional practices occurred, and allowed the continuance of such a policy or custom of deliberate indifference for failure to provide adequate medical attention or intentionally interfered with Plaintiff Johnson's medical treatment[.]" (*Id.* at 18–19.) These portions of the Complaint contain only vague, conclusory allegations which do nothing to advance the plaintiff's medical-needs claim.

negligence (or, as the Complaint characterizes it, a claim of "negligent infliction of emotional distress" (Doc. No. 1 at 18)) that is not cognizable under Section 1983. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim" under § 1983.).

In sum, the Complaint fails to state a claim upon which relief may be granted and will be dismissed on that basis.

### III. CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. The dismissal is without prejudice to the plaintiff's ability to pursue claims under the state law of negligence in state court, or to file a new lawsuit in this court related to dangerous prison conditions.

In light of this disposition, the plaintiff's Motion to Produce Security Footage Video (Doc. No. 3) is **DENIED** as moot.

The court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge